### Clark v. Commonwealth.

(Decided June 16, 1915.)

Appeal from Christian Circuit Court.

1. Indictment and Information—Carnal Knowledge.—An indictment under the provisions of Section 1155 of the Kentucky Statutes,

which charges that the defendant did willfully and feloniously have carnal knowledge of a female under sixteen years of age, is not fatal on demurrer because of its failure to allege in the language of the statute that he unlawfully had such carnal knowledge.

2. Criminal Law—Carnal Knowledge.—Evidence examined and found to be insufficient to support the verdict that the prosecuting witness was under sixteen years of age at the time of the carnal knowledge.

3. Criminal Law—Trial—Character and Reputation of Defendant— Admonition.—Where a defendant introduces witnesses to show his good character, the Commonwealth may upon cross-examination, for the purpose of testing the knowledge of the witness as to the defendant's reputation, ask him as to other offenses with which defendant has been charged; but the court should, when such questions are propounded and such evidence introduced, always admonish the jury of the purpose for which it is admitted.

C. H. BUSH and JOHN FELAND for appellant.

JAMES GARNETT, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant was indicted in the Christian Circuit Court charged with carnally knowing a female less than the age of sixteen years, under the provisions of Section 1155 of the Kentucky Statutes. Upon his trial he was found guilty and sentenced to confinement in the penitentiary for not less than ten nor more than twenty years, and he has appealed.

Four grounds for reversal are relied upon: First, that the indictment was defective; second, that the verdict was flagrantly against the evidence and there was not sufficient evidence to support it; third, that incompetent evidence was permitted to go to the jury; and, fourth, the improper conduct and argument of the Commonwealth's attorney.

The sufficiency of the indictment is attacked because it fails to charge in the language of the statute that appellant unlawfully had carnal knowledge of Alberta Mitchell. The indictment, however, did charge that he did willfully and feloniously have such carnal knowledge; and that the failure to use the word "unlawfully" in such an indictment is not fatal to its sufficiency upon demurrer is no longer an open question in this State. Greer v. Commonwealth, 164 Ky., 396; Overstreet v. Commonwealth, 147 Ky., 471.

Whether the evidence is sufficient to support the verdict must be sub-divided and considered in two aspects: First, does it sufficiently show the existence of improper relations between appellant and Alberta Mitchell; and, second, if so, does it sufficiently show that at any time when such relation was sustained she was under the age of sixteen years?

The positive evidence of the prosecuting witness, Alberta Mitchell, is that in December, 1913, or January, 1914, the defendant for the first time had sexual intercourse with her, and that such relations continued between them until about February, 1915. The testimony of the defendant is equally positive that he at no time had any such relations with Alberta Mitchell; but, without going into detail on this question of fact, it is sufficient to say that numerous circumstances and occurrences shown by the record corroborate the statements of the prosecuting witness and point almost unerringly to the existence of such relations between them during the period named. There can be no doubt that the jury was authorized upon this issue to find from the evidence the illicit relationship between the parties.

But whether the girl was at the time of any such intercourse under sixteen years of age is a much more serious question, and necessitates an examination in detail of the evidence.

The whole evidence for the Commonwealth on this issue is given by the mother of the girl, the girl herself, and her next older brother, Eli Mitchell.

The evidence of the mother is that Alberta Mitchell was born on the 25th of March, 1898; but on her cross-examination the family Bible was produced, which showed the date of her marriage to William Henry Mitchell to be July the 21st, 1889, and the dates of the birth of their five children as follows:

"Mary Emma Mitchell, Oct. 25th, 1890; Katie Pansy Mitchell, Dec. 3rd, 1892; Eli Duffy Mitchell, April 5th, 1895; Alberta Mitchell, March 25th, 1897; Jessie Mitchell, March 3rd, 1899."

She states that the entries in the Bible as to the dates of birth of the first three children were placed therein by her and are correct, but that the entries as to Alberta and Jessie were placed therein by some other member of the family, and are incorrect; she states that Alberta entered school in September, 1904, when she was six years

old, and that she had never discovered the mistake in the entry as to her age until a short time before the trial. She admitted on cross-examination that in April, 1913, she signed a report to the school census-taker stating that Alberta was sixteen years of age, and admitted that in April, 1914, she signed a report to the census-taker which recited that Alberta was seventeen years old March 25th, and Jessie fifteen years old March 3rd. These reports agree with the entries in the Bible, and the census-taker testifies that in 1913 he called on Mrs. Mitchell and got these dates from her after an examination by her of the family Bible.

Alberta Mitchell testified in the lower court on the 26th of March, 1915, and on her main examination by the attorneys for the Commonwealth she was asked nothing about her age, but on her cross-examination she testified as follows:

"Q. Miss Alberta, you were eighteen years old yesterday, weren't you? A. No, sir. Q. Haven't you frequently said that you were born the 25th of March, 1897? A. Yes, sir; I have said it. I thought at the time I would be 18 yesterday. Q. You have always said it up until after you got out this warrant, haven't you? A. Yes, sir. Q. But since you got out this warrant against Capt. Clark you have changed, and now state that you were born the 25th of March, 1898. That is a fact? A. Yes, sir."

On her re-direct examination, in response to questions from the attorney for the Commonwealth, she also stated:

"Q. I believe you do say that you said all the time until this matter came up that you were born on the 25th of March, 1897? A. Yes, sir. Q. When did you first learn that you were born a year later than that? A. Well, when we went down to swear out the warrant, and when we went back home we were talking about it and discussing the age, and mamma told me I wouldn't be but 17 this month, and that is the first time I knew anything about it. Q. The fact is, you put facts in that warrant which, if you had been correct about it, would show that you were born the 25th of March, 1897? A. Yes, sir. Q. But when you went back and your mother was discussing it in your family, your mother told you right then that you were a year mistaken? A. Yes, sir.

Q. And this is the first information you had of that? A. Yes, sir.''

The brother, Eli Mitchell, on his main examination testified as follows:

''Q. Do you know what her date of birth is? A. March 25th, 1898, is correct. Q. Do you know who wrote these two last names, 'Alberta Mitchell' and 'Jesse Mitchell?' A. I am not positive, but I think it was my sister. Q. I wish you would explain what you know about those two dates, and when they were written? A. I think when my sister was married, my sister next to me said she would put the marriages in the book ⁕ ⁕ ⁕ Q. Tell what you know yourself about these two last ones? A. This name, Alberta Mitchell, was in ink, and that was all, and Jessie Mitchell was in ink, and I saw some time ago the date '1897' put in with pencil, and the date '1899' put in with pencil, and I erased it and wrote it with ink. Q. Was it 1898 or 1897? A. It was 1897, that pencil. Q. And you erased the pencil marks and put it in ink yourself? A. Yes, sir. Q. Why did you do that? A. I don't know exactly why I did it, but it was written with a pencil and I thought that was correct and I put it in ink? Q. You thought that it was correct and you put it in ink? A. Yes, sir. Q. Did you write the two dates there, of Jessie's and Alberta's birth? A. Yes, sir. Q. March 25th, 1897, and March 3rd, 1899? A. That 1899, March 3rd, was already there.''

And on his cross-examination he testified as follows:

''Q. When did you first find out that she was born March 25th, 1898? A. I found it out directly after the indictment was sworn out for Mr. Clark. Q. That was this court? A. Yes, sir. Q. You never knew before this court that she was born on the 25th of March, 1898? A. No, sir. Q. When did you think she was born before that? A. 1897. Q. And you say you wrote it there in that book? A. Yes, sir. Q. You made those figures? A. Yes, sir. Q. But before you put it there, '1897' in ink, you found it there, '1897' in pencil?' A. Yes, sir.''

This was all the evidence introduced by the Commonwealth bearing upon the question of the girl's age, and it will be observed that the statements of Alberta Mitchell and Eli Mitchell on this question amounted to nothing more than that they had information from their mother, after this prosecution had begun, that Alberta Mitchell was born on the 25th of March, 1898, although

they had each always believed previously that she had been born on the 25th of March, 1897.

So that, as a matter of fact, the only evidence that the girl was born on the 25th of March, 1898, is that of her mother, and her statement is greatly weakened by her own admission that in April, 1913, and April, 1914, she signed and gave to the census enumerator written statements showing Alberta's age to be one year older than she now claims.

As opposed to this evidence of the mother, thus weakened, we have: First, the record in the family Bible; second, that the daughter and her older brother had always been under the impression that she was born on the 25th of March, 1897, until after this prosecution was begun, when they were for the first time told differently by their mother; third, we have the school record showing that Alberta started to school in September, 1903, and that she was then six years of age; in fact, under the law, if she had been born when her mother now says she was, she would not have been then of school age, and would not have been entitled to enter school at that time; fourth, the school record from 1903 down to 1914 corresponds with the age given in the family Bible, and it is clearly shown as to the years 1913 and 1914 that the census enumerator's record was made from and based upon the written statement of Mrs. Mitchell herself as to the age of the child; fifth, we have the evidence of two unimpeached witnesses that on the 11th of February, 1915, when they, as the members of a committee from a lodge, went to the Mitchell home and got a written statement from Alberta, which is in evidence, that the mother then and there told them that the girl was then 17 years of age, and would be 18 in the following March; sixth, we have the significant fact that on the 13th of February, 1913, Alberta Mitchell, then believing that she was born on the 25th of March, 1897, swore out a warrant before the police court wherein she charged appellant with having carnal knowledge of her in February, 1913, which was one month before she would become 16 years of age, as she then believed; whereas, on the trial of this case, she testified that she never met Clark until October or November, 1913, and that no illicit relations existed between them until December, 1913, or January, 1914. It will be observed that in her affidavit of the 13th of February, 1915, she

fixed the date of her first illicit relation with Clark as February, 1913, while on the trial in the circuit court, some six weeks later, she fixed the date some ten or eleven months afterwards, having been informed in the meantime by her mother that she had been mistaken one year in her age.

It may not be out of place to say in addition to all of this that neither the father, the youngest son, nor either of the older sisters testified in this case, although one of the latter is shown by the evidence to have originally placed in the family Bible the entries of the date of birth of Alberta Mitchell and Jessie Mitchell, and was within the jurisdiction of the court, as was Jessie.

The unsupported statement of the mother, when contradicted by these records, part of which, at least, were based upon her own written statements, and by all the facts and circumstances in evidence in this case, will not be deemed sufficient to supp rt the verdict.

Not only is the verdict flagrantly against the evi dence on this vital point, but, as we see it, the overwhelming evidence that the girl was born on the 25th of March, 1897, destroys the statement of the mother to the contrary, and leaves no sufficient evidence to uphold the verdict.

It is not improbable that the jury was so impressed with the enormity of appellant's offense, whatever the girl's age may have been, that it did not give proper consideration to the evidence on this essential point; in fact, it is apparent that they absolutely ignored it for that or some other reason.

From a moral standpoint, nothing is to be said in extenuation of appellant's conduct; irrespective of the girl's age, it has been reprehensible in the extreme, according to the weight of the evidence.

But one indispensable element in his guilt under this charge is that the girl must have been at the time of the carnal knowledge "under the age of sixteen years." We have reluctantly reached the conclusion, after a careful analysis of the evidence, that it is not sufficient, on this vital point, to sustain the verdict. No unprejudiced and earnest seeker for the truth can read and digest the evidence and reach a different conclusion.

After the defendant had introduced evidence to show his good character, the commonwealth, on cross-examination, over the objection of the defendant, was per-

mitted to ask some of the witnesses if they had ever heard of Clark being charged with misappropriation of the funds of the military company to which he belonged; whether they had ever heard of his being charged with failing to pay over delinquent tax money that he had collected; whether they had ever heard about his being charged with breaking into a store; and whether they had ever heard of his being charged with immoral conduct with other girls. The court overruled the defendant's objection to this line of testimony, and permitted the same to go to the jury without any admonition whatsoever as to the purpose for which it was admitted.

In the case of McCreary v. Commonwealth, 158 Ky., 619, the precise question presented was involved, and this court, in passing upon it, said:

"The introduction of such evidence should be accompanied by an admonition from the court that it is only competent for the purpose of testing the knowledge or information of the witness as to the general reputation of the defendant, and is in no sense to be construed by the jury as substantive evidence of the defendant's guilt of the charge involved."

It is apparent from that case the action of the lower court in not giving the admonition was erroneous.

It is unnecessary for us to pass upon the alleged improper conduct of the attorney for the Commonwealth as the same complaint may not arise upon another trial.

For the reasons given, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.