## Whitehead v. Commonwealth.

(Decided October 4, 1921.)

### Appeal from Boyd Circuit Court.

Intoxicating Liquors—Instructions.—Where one is indicted under section 1, chapter 81, Session Acts, 1920, for the offense of keeping intoxicating liquors for sale, and he introduces evidence, which tends to prove, that he kept the liquors in his private dwelling

which was used solely for a dwelling, and kept the liquors for his own personal consumption, and not for sale, the court should give an instruction based upon such evidence embodying that defense.

R. S. DINKLE for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The appellant, William Whitehead, jointly with his brother, Harry Whitehead, was indicted for the offense of keeping for sale spirituous liquors other than for sacramental, medicinal, scientific or mechanical purposes. The offense is denounced by the provisions of section 1, chapter 81, Session Acts of the 1920 General Assembly, and the section provides as follows:

"That it shall be unlawful to manufacture, sell or give away, or keep for sale or transport, spirituous, vinous, malt or intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes, in the Commonwealth of Kentucky."

The appellant, upon a separate trial, was found to be guilty by the jury, of the offense charged in the indictment, and his punishment fixed at a fine of $300.00 and costs, and sixty days' imprisonment, and the court adjudged accordingly, and from the judgment the appellant has appealed.

The grounds upon which he relies for a reversal of the judgment are:

(1) Incompetent evidence was permitted to be introduced against him.

(2) The court erred to his prejudice in instructing the jury.

(3) The court erred to his prejudice in failing and refusing to instruct the jury concerning the entire law of the case.

The facts, as developed by the evidence, were that the appellant was the keeper of a place, at which he sold lunches, near-beer, cigarettes, tobacco and buttermilk to his customers. He lived with his family in five upstair rooms over a separate building from that in which he conducted his business. His brother Harry and Harry's wife either lived in the same house which appellant and his family occupied or were visitors at his dwelling and

occupied one of the five rooms. Harry assisted in conducting the business of appellant. Upon a day when appellant was absent upon a trip to Cincinnati, one Charles Lester was seen to get down from a train carrying a heavy suit case and was seen thereafter near the stairway which led up into appellant's dwelling, in conversation with Harry Whitehead, and thereafter he and Harry ascended into appellant's dwelling and within three or four minutes descended the stairway therefrom. The police procured a search warrant and ascended into appellant's dwelling and made a search of it for liquors. In a bed room, which appellant claims to have been the one occupied by him, underneath a bed, they found two and one-half gallons of "moonshine" whiskey in several glass jugs. Harry Whitehead testified that he had no knowledge of or connection with the whiskey, and the transaction which took place between him and Lester was that he purchased from Lester about two gallons of buttermilk to be sold in appellant's trade, and the container in the lunch stand being full, he received the buttermilk in his brother's dwelling where a portion of it was poured into a bucket, and the other half left in a jug, which he directly took and sold to appellant's customers, and that the buttermilk was carried by Lester in the suit case in certain glass jars. Appellant deposed that the whiskey which was found was his property; that he purchased it some time theretofore from two "bootleggers" and kept it in his dwelling for his own personal consumption and not for sale; that he was afflicted with a heart ailment for which the physician had advised the use of spirituous liquors, and since it was taken by the police he had procured a prescription and purchased a quantity every ten days. No evidence was offered to the effect that appellant, or any one for him, had ever sold or offered to sell any of the liquor.

(a) The complaint that appellant now makes of the introduction of incompetent evidence against him upon the trial is not before us and cannot now be considered, as he made no objection to any of the evidence and there being no rulings of the trial court upon its competency there is necessarily an absence of any exceptions to such rulings. It may, however, be properly said that the offense charged against the appellant is not with having acquired liquor unlawfully, but with keeping it with the intent to sell it, which is the sole offense. It will, also, be

observed that the statute in no place makes it unlawful on the part of the purchaser to acquire liquor by purchase. Hence, it would be wholly immaterial in any case where one is accused of the offense of keeping spirituous liquor for sale, to offer evidence as to the manner of the acquisition of the liquor, unless the manner, circumstances or facts, with relation to the acquisition of the liquor, will shed light upon the intent with which it was kept.

(b) A portion of the first instruction is complained of and this complaint seems to be well founded. After the court had properly instructed the jury in substance that if it believed from the evidence, beyond a reasonable doubt, that the appellant before the finding of the indictment, and since the enactment of the statute, kept for sale two and one-half gallons or any quantity of whiskey, to find him guilty as charged in the indictment and to fix his punishment within the limits prescribed by the statute, there was added a definition of the word "keep" which the jury was instructed was the meaning of it as used in the statute. While the definition was abstractly correct as applied to some conditions, the term "keep for sale" is a simple term, in common use, and generally understood and to attempt a definition of it is more calculated to confuse than otherwise.

There was also added to the instruction a comment upon the evidence and a declaration that it was within the power of the jury to convict the accused upon the circumstances in evidence and a reminder that the jury was not confined to the testimony of appellant, alone, in determining the intent of the accused in having the liquor in possession. These directions were probably true, but were calculated to have been received by the jury as intimations, in the opinion of the court, that the evidence justified a conviction, and that the testimony of the appellant should be scrutinized severely, if not rejected. Under our system in a criminal or penal cause, the jurors are the sole judges of the weight and potency to be given to the evidence in determining the existence of facts, and the court should not invade their province.

(c) The appellant offered an instruction to the effect that if the jury believed from the evidence that the liquor was kept by appellant in his private dwelling for his personal consumption and that of his family and guests, and not for sale, it should find him not guilty. This instruction was based upon section 8 of chapter 81, *supra,* where it is declared as follows: "But nothing in

this act shall be construed so as to make it unlawful to possess liquors in one's private dwelling, while the same is occupied and used by him as his residence only, and such liquors need not be reported, provided such liquors are for the use, only, for the personal comsumption of the owner thereof and his family residing in such dwelling, and for his *bona fide* guests when entertained by him therein; but the burden of proof shall be upon the possessor in any action concerning the same, to prove that such liquor was lawfully acquired, possessed and used. . . . '' The court rejected and failed to give any instruction giving effect to the above quoted statute, although the facts, as the evidence for appellant tended to prove, presented a state of case which justified such an instruction and which would have embodied the entire defense of appellant. It will be observed that proof of the bare possession of spirituous liquors casts the burden of proving that it is being kept for a lawful purpose upon the possessor. The statute does not preclude a defense to the offense charged in this indictment, from the fact that the liquor was unlawfully acquired, because however acquired, if it was not kept for sale, the defendant cannot be convicted. The above quoted portion of the statute seems designed to remove from one indicted for keeping liquor for sale any imputation of guilt from having acquired it from a person having no right to sell or dispose of liquors and to make him guilty only of an offense in the event he should keep the liquors for sale. The statute having cast upon the possessor of liquor the burden of proving that he has it for a lawful purpose, it is important to a possessor to have the law given to the jury which justifies him in having it in possession for a purpose which is lawful. We think that the court should have given an instruction embodying the whole defense of the appellant, as his own testimony tended to prove that the liquor was kept solely for his own personal consumption. For these reasons the judgment is reversed, and upon another trial, if the evidence tends to prove a similar state of facts, the jury should be instructed as follows:

(1) If the jury believes from the evidence, beyond a reasonable doubt, that the defendant, William Whitehead, or he and Harry Whitehead, acting together, in Boyd county, since June 30th, 1920, and before the finding of the indictment did keep for sale two and one-half gallons, or some other quantity of whiskey, it will find

him guilty as charged in the indictment and fix his punishment therefor at a fine of not less than $50.00 and not more than $300.00 and imprisonment in the county jail for a period of not less than thirty days and not more than sixty days in its discretion.

(2) Although the jury may believe from the evidence that defendant did keep the whiskey mentioned in the evidence in his possession or control, but if it believes from the evidence that he kept same in his private dwelling, while the same was occupied by him as a dwelling only, and that he further kept the same solely for his own personal consumption, and not for sale, it should find him not guilty.

(3) If the jury have a reasonable doubt of the defendant having been proven to be guilty as set out in instruction number one, it should find him not guilty.

The cause is remanded for proceedings not inconsistent with this opinion.