## Waters v. Commonwealth.

(Decided October 18, 1927.)

### Appeal from McCreary Circuit Court.

1. Homicide.—Evidence held sufficient to sustain conviction of manslaughter on theory that defendant either fired fatal shot or was present and aided and abetted another who did so.
2. Homicide.—Whether accused, by either firing fatal shot or being present and aiding and abetting another who did so, was guilty of murder or voluntary manslaughter, according to whether he was actuated by malice aforethought, or did so in sudden heat and passion or in sudden affray, or was not guilty on ground of self-defense, held for jury.

3. Criminal Law.—In homicide prosecution, where it appeared defendant fired shot or aided and abetted codefendant, who did so, evidence that codefendant had made threat against deceased held competent on issue whether, if codefendant killed deceased, he did so with malice aforethought, or in sudden heat and passion, or in self-defense, since it tended to establish that codefendant killed deceased out of malice aforethought.

4. Homicide.—In homicide prosecution, evidence that codefendant had previously made threat against deceased held not prejudicial, since it in no wise connected accused with trouble, if any, between codefendant and deceased, and accused's chief defense was that he did nothing and took no part in difficulty, and such evidence would establish that codefendant entertained malice toward deceased and would be beneficial to defendant.

5. Criminal Law.—Where record disclosed that neither objection nor exception was offered or taken at time evidence was introduced before jury, accused could not complain on appeal that testimony was incompetent and prejudicial.

6. Criminal Law.—In homicide prosecution, instruction advising jury as to accused's rights in event they believed that codefendant had in good faith summoned accused to assist in making arrest, and accused in good faith was present pursuant to such action, held not prejudicial, because of too much emphasis on expression "in good faith," where evidence did not show that deceased was killed while resisting an officer while making arrest.

7. Criminal Law.—Where consideration of entire record led to conclusion that on accused's trial below there was no error prejudicial to his substantial rights, Court of Appeals was without authority to order reversal of judgment of conviction.

DUNCAN & BELL, H. C. CRESS and J. E. STEPHENS for appellant.

F. E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellant, W. E. Waters, and one Jim Wilson, were jointly indicted by the grand jury of McCreary county for the murder of Willie Waters. When tried separately, appellant was found guilty of manslaughter and sentenced to confinement in the penitentiary for 15 years; hence the appeal.

Appellant urges that the verdict of the jury is not supported by the evidence. To this contention we cannot agree. The evidence is sufficient to sustain the verdict of the jury upon the theory that he either fired the fatal shot or was present and aided and abetted Jim Wilson,

who did so. Under the facts it was for the jury to say in either event whether by so doing he was guilty of murder or voluntary manslaughter, according to whether they believed he was actuated by malice aforethought, or did so in sudden heat and passion, or in a sudden affray, or was not guilty upon the ground of self-defense. As is usual in cases of homicide, there were two theories as to how it occurred. The commonwealth insisted and introduced ample evidence to authorize and support the finding that Willie Waters was killed either by appellant, W. E. Waters, or his codefendant, Jim Wilson, and that whichever of the two did so the other aided and abetted. The evidence for the commonwealth further was sufficient to justify a finding by the jury that the homicide was committed by them either with malice aforethought or in sudden heat and passion. The defendant's theory of the case was that Willie Waters was killed in self-defense. In behalf of appellant it was sought to be established that he was killed by Jim Wilson in self-defense, and, in any event, that appellant did nothing and said nothing that would justify the inference that he aided or abetted the killing. Two witnesses swore positively that they saw appellant shoot and that the shot fired by him was the last of three shots fired during the difficulty. A number of witnesses testified that three shots were fired. A number of them also testified that appellant's codefendant, Jim Wilson, fired only two of them. From the testimony of several of the witnesses it is to be understood that the first shot fired by Jim Wilson struck deceased in the right wrist, and that the fatal shot was either the second fired by Wilson or the third fired by appellant. There is no testimony tending in the least to establish that deceased fired any shot. On the other hand, the weight of the evidence is that he had no weapon. Deceased was some 40 or 50 feet from either Wilson or appellant when he was shot. The evidence of appellant and Wilson to the effect that at the time Wilson fired the two shots at deceased the latter was advancing on him with a drawn pistol, and that it was necessary for Wilson to shoot to save himself, is contradicted by the weight of the evidence found in the record. Under these facts it cannot be said that the verdict of the jury is flagrantly against the evidence.

Appellant urges most vigorously that the trial court erred in admitting testimony of a threat made by his codefendant, Jim Wilson, against deceased, Willie Waters.

The basis of the argument is that appellant is not shown to have been present when the statement was made and that there was no evidence that he and Wilson had conspired to kill Willie Waters; hence that threats or statements made by his codefendant before the homicide were incompetent against him. Witness Lige Watson testified that at a time and place fixed by him shortly before the homicide, in a conversation with Jim Wilson, the latter, who then saw deceased, Willie Waters, said of him:

"Yonder goes a God damn son of a bitch that won't have to cross me that far (indicating on his finger) until I put him off."

The evidence was competent for this reason: Under the facts hereof appellant was entitled to an acquittal if Jim Wilson killed Waters in self-defense; and the jury was so instructed. If Jim Wilson killed Waters not in self-defense, but out of malice aforethought, or in sudden heat and passion, and appellant aided and abetted him, he was guilty of murder or manslaughter, according as he abetted, with malice aforethought, or in sudden heat and passion, and the jury was so instructed. Hence any testimony tending to shed light on the question whether, if Jim Wilson killed Waters, he did so with malice aforethought, or in sudden heat and passion, or in self-defense, was competent upon the trial of appellant. The evidence that Wilson previously had threatened Waters was certainly competent on these issues, as it tended to establish that Wilson killed Waters out of malice aforethought.

In any event it would be difficult to hold this testimony to be prejudicial. It in no wise connected appellant with the trouble, if any, between Jim Wilson and deceased, Willie Waters. Appellant's chief defense was that he did nothing; that he took no part in the difficulty between Jim Wilson on the one side and Robert Troxel and deceased, Willie Waters, on the other; and neither said nor did anything authorizing the inference that he aided or abetted Jim Wilson in this homicide. That being true, evidence that Jim Wilson had previously threatened to kill deceased, establishing that he entertained malice toward him, would be beneficial rather than prejudicial to appellant. Wilson may more readily have been believed to have killed the object of his malice and threats without aid or encouragement than one he was

not shown to have threatened. Hence appellant's complaint that his evidence was incompetent or prejudicial cannot be sustained.

While appellant's codefendant, Jim Wilson, was testifying, grounds for his contradiction were laid as to things he had said to several different witnesses, and he was successfully contradicted by these witnesses who were called in rebuttal. The court admonished the jury as to the purpose of the testimony. Appellant complains that much of this testimony was incompetent and prejudicial. We find, however, that he is in no position to raise the questions here, since the record discloses that neither objection nor exception was offered or taken at the time it was introduced before the jury.

Appellant's codefendant, Jim Wilson, appears to have been a deputy constable for one of the magisterial districts of McCreary county. Appellant is his brother-in-law. He spent the night at appellant's home the night before this homicide. He had in his hands for execution a warrant of arrest for Robert Troxel. According to the testimony of appellant and his codefendant, the latter summoned the former to go with him and aid him in arresting Robert Troxel. Troxel was found in company with deceased, Willie Waters, and one Quince Phillips. The testimony for appellant as to how Willie Waters came to his death was to the effect that when Jim Wilson undertook to put Robert Troxel under arrest deceased, Willie Waters, interferred by walking between the two and taking hold of Wilson; that Wilson then knocked Waters down with his pistol, following which Wilson and Troxel engaged in a fight, during the course of which Wilson knocked Troxel down with his pistol and disarmed him of a pistol which he had drawn by knocking it from his hand. Their testimony was that after Willie Waters was knocked down he left the scene of the difficulty; went to his home some 75 or 80 yards distant; procured a pistol and started back again; that appellant, observing this, called to his codefendant, Wilson, "Lookout Jim; here he comes with a pistol;" that Wilson then took refuge behind a large stone nearby and fired two shots at deceased, who had continued to advance on him with drawn pistol.

The trial court gave an instruction advising the jury as to the respective rights and duties of the parties in view of the fact that Wilson was a peace officer and had a warrant of arrest for Robert Troxel. That feature of

the instruction advising the jury as to appellant's rights in the event the jury should believe from the evidence that his codefendant, the constable, had in good faith summoned him to assist in making the arrest, and he in good faith was present pursuant to such action, is much complained of upon the theory that the expression ''in good faith'' was repeated so frequently as to give it undue emphasis in this instruction. We do not know of any better or clearer or less objectionable words to express the idea that must have been conveyed to the jury to give them the law on this question than the words ''in good faith.'' The fact that appellant's codefendant was a peace officer and had a warrant of arrest for Robert Troxel seems to have played very little part in the killing of Willie Waters further than it seems to have been the means whereby the parties were brought in contact. Such things as Willie Waters said and did, according to the testimony of appellant and his codefendant, when the latter undertook to arrest Robert Troxel, did not, in their eyes, constitute the offense of resisting an officer while making an arrest, for neither of them arrested or attempted to arrest him for committing that offense in their presence. It, at most, offered the constable an excuse to strike him with his pistol. According to their testimony, Willie Waters then left the scene of the difficulty. He was killed, not in an attempt by the officers to arrest him for resisting the arrest of Robert Troxel, but because he later, by advancing upon and attacking Jim Wilson with drawn pistol, made it necessary that Wilson kill him in his necessary self-defense. Whether that was true, or whether, as the testimony for the commonwealth from the decided numerical weight of the evidence tends to establish, it was true that Willie Waters was killed after he had been knocked down by Jim Wilson, while leaving the scene of the difficulty with his back or side turned toward appellant and his codefendant, and when some fifty feet away from them, and at a time when he had no weapon, and was doing nothing, was the question to be decided by the jury. In this state of case the fact that appellant's codefendant was a deputy constable, had a warrant of arrest for Robert Troxel, and had summoned him to aid in making that arrest, and the court's instruction as to the respective rights, and duties of the parties growing out of these facts, would appear to have played but little part in aiding the jury to arrive at a ver-

dict. So far as this trial was concerned, the issue was whether appellant or his codefendant killed Willie Waters under such circumstances as that appellant would be guilty either of murder or manslaughter by having himself done the act of killing or having aided and abetted his co-defendant in so doing under such circumstances as would make him guilty either of murder or manslaughter, or whether the homicide was excusable upon the ground of self-defense without regard to the fact that Jim Wilson was a deputy constable, and had summoned appellant to assist him; and if, in the instruction on that question, the trial court placed too much emphasis upon the fact that appellant's being summoned to aid in effecting the arrest of Robert Troxel must have been in good faith, it cannot be said to have been prejudicial to appellant's substantial rights.

This court's consideration of the entire record leads to the conclusion that upon appellant's trial below no error prejudicial to his substantial rights was committed. It therefore follows that we are without authority to order a reversal of the judgment.

The judgment will therefore be affirmed.