## Wright v. Commonwealth.
(Decided Feb. 26, 1937)

442

WAUGH & HOWERTON and MONT WALKER for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Perry—Affirming.

The appellant, Charles Wright, was upon trial, on a charge of attempted rape, an offense denounced by

section 1153, Kentucky Statutes, convicted and his punishment fixed at five years confinement in the penitentiary.

Complaining of this judgment, appellant appeals, seeking its reversal upon the grounds: (1) that the verdict is contrary to the law and evidence; (2) that the court failed to correctly instruct the jury; and (3) that it erred in admitting incompetent evidence against him.

It appears that the Middleton and Wright families had lived upon terms of close and friendly intimacy, as neighbors on Hood's creek in Boyd county, Ky., in homes some 500 yards apart, for some months prior to the alleged occurrence of the offense in evidence.

Upon this occasion, wherein the accused is charged with having committed the offense of attempted rape upon Opal Middleton, it appears that Mrs. Middleton had sent Opal, her small seven year old daughter, over to the Wright home to borrow some meal, when, upon her arrival there, she found none of the Wright family at home except Mr. Wright, who, upon hearing her knock at the door, opened it and admitted her, and upon being advised of the nature of her errand, told her that his wife was then away and he did not know whether they had any meal on hand or not, but that he would look around in the kitchen and try to find some. When the infant prosecutrix was asked what the appellant did to her while she was there at his home, she answered that he told her to lay down on the bed, when he pulled up her dress, laid on her and wet on her bloomers down near her private parts. Further she testified that he did not pull off her bloomers, but that as soon as she left the house after this happening, she took them off, put them under her arm and took them home, where, upon her arrival, she told her mother what had happened. Appellee further states that she went upon this errand to the Wright home at about 2 o'clock on the afternoon of April 20 or after she had come back from school, where she was a pupil in the first grade. Further when testifying, upon being so specifically interrogated, she stated that she, while at the Wright home, saw no "little chickens" nor any picture magazines laying on the bed, nor had looked at any magazines while she was lying on the bed, as was testified to by the accused.

Upon cross-examination, she was asked if she laid

down on her stomach, to which she answered, ''Yes'';
that Mr. Wright told her to lay down on the bed, where
she laid about two minutes.

Further, upon redirect examination upon this point
she stated that the accused unbuttoned his pants down
the front and that after she had laid down on the bed,
as Mr. Wright told her to do, he got on her stomach,
but that he did not lay on her back; also, that he went
into the back room and got a book which had pictures
in it and told her to look at it; and that she did not get
any meal from Mr. Wright.

The mother, Mrs. Middleton, next testified that she
had upon this occasion sent her little daughter, Opal,
over to the Wrights' to borrow some meal; that when
she came back she asked her if she had gotten it, when
she answered that she had not, that Mrs. Wright was
not at home and that Mr. Wright had told her he·did
not have any; that when asked what had kept her away
so long, she answered, ''Why Mr. Wright got me down
on the bed and wet on me,'' and that she ''threw the
bloomers down from under her arm and I picked them
up and looked at them.'' Further she testified that
upon her then examination of the bloomers she found
them wet with seminal fluid; that she was a married
woman, some thirty-six years of age, had borne nine
children as the issue of her marriage, and was thus
qualified and able to positively identify the wet sub-
stance she found on Opal's bloomers as seminal fluid.

Also, upon the later return home of Mr. Middleton,
he too examined his little daughter's wet bloomers and
positively pronounced the wet substance found thereon
to be seminal fluid and so testified.

There was no claim made that any penetration was
effected upon the little girl by the accused upon this oc-
casion of his charged attempted rape of her.

This was all the testimony introduced in chief by
the commonwealth, when the accused testified in his
own behalf that little Opal had been sent and came to
his home upon this occasion to borrow some meal; that
upon her knocking at the door he opened it and let
her in, when he was told by her that her mother had
sent her to borrow some meal; that he told her his wife,
Mrs. Wright, was away at the time, but that he would
look about in the kitchen and see if he could find any

and had then gone back to hunt for it; that while he was in the kitchen the little girl, upon hearing the noise of some little chickens he had in a back room of the house, went back there to see them and that, a little while afterwards, on hearing a "cluttering" of the chickens, he went back there to learn the cause of it and found Opal sitting on the side of a tub of water, holding one of them up in her hands, when he had her put it down, took her by the arm and led her back into the front room, telling her to let the chickens alone; that he did not touch the child during this time of her visit, except when he took hold of her when leading her away from his chickens; that while she was there, and he was looking for the meal for her, some one came to the house inquiring as to the whereabouts of a certain store, to which he directed him; also, that just after she had left, Mr. Ferguson, an insurance agent, called at the house to collect an insurance premium owing him. Further Mr. Wright stated that he had been a minister and revivalist for some years, but was at this time occupied as an employee in a nearby foundry, where he reported for work a short while after the little girl left; and was later arrested there that evening, charged with having committed upon her the offense in evidence of attempted rape.

The insurance agent, Mr. Ferguson, referred to by the accused in his testimony as having called at his home a short while after the little girl left, testified, when called as a witness for the accused, that he had visited his home upon the afternoon in evidence to collect an insurance premium when he saw and talked with the appellant, but had noticed nothing unusual in his manner or speech.

Appellant next, by way of further defense to the charge, introduced numerous character witnesses to establish that his general reputation for morality, among those who knew him best, in the neighborhood where he lived was good.

On cross-examination, these witnesses were asked, over appellant's objection, if they had heard talk or rumors in their neighborhood of the commission by the accused of specific prior offenses of rape; if they had not heard talk of the accused's specific offense of raping a little Tackett girl shortly prior to the time he was charged with having committed the instant offense, and

also of a like offense committed upon the little McCoy girl about a year before, and also of his rumored commission of other sex offenses about the same time. Upon the conclusion of this evidence introduced by appellant to establish a good moral character, the commonwealth introduced rebuttal evidence tending to show that his reputation for morality in his neighborhood was bad, as based upon the talk heard there as to the above-named instances of sexual misconduct and other like offenses evidencing the possession of such trait of character by the accused.

Such being in brief the evidence heard upon the trial, we will now consider appellant's assignment of errors claimed committed therein, which he argues entitle him to a reversal.

To the first objection urged, that the verdict and judgment thereon is against the evidence, it is sufficient response to state that we are confident that the evidence introduced by the commonwealth, as summarized supra, in support of its contention that the accused was guilty of the crime charged, is sufficient, even though in many respects in conflict with the appellant's defensive evidence, to support the jury's verdict finding the accused guilty.

First, the evidence given by Mr. and Mrs. Middleton and objected to by appellant, that the substance found upon their little child's bloomers when examined by them was seminal fluid, was competent.

In the case of Logsdon v. Commonwealth, 215 Ky. 707, 286 S. W. 1067, it was held, adversely to a like contention there made, that the testimony of three experienced women, that the substance discovered by them upon the person of the little child was seminal fluid, was competent, the court saying:

"The three witnesses were married women, and stated that from experience they were familiar with the appearance and odor of seminal fluid, and, after so qualifying themselves, testified that the substance found upon the person of the little child, judging by its appearance and odor, was seminal fluid. Under those facts they were qualified to testify on the subject, and the testimony was competent."

Alike or equal qualification as to their competency

was made both by Mr. and Mrs. Middleton before they likewise here so testified. Further, the testimony of the infant prosecutrix, even though only seven years of age, was also competent, as was held in the like case of Meade v. Commonwealth, 214 Ky. 88, 282 S. W. 781, 783, where we said:

> "Neither is there any merit in the objection to the testimony of the prosecutrix because of her extreme youth rendering her incompetent as a witness. We had the question before us in the case of White v. Commonwealth, 96 Ky. 180, 28 S. W. 340, 16 Ky. Law Rep. 421, wherein the witness testified in this character of prosecution, and it was again considered in the case of Leahman v. Broughton, 196 Ky. 146, 244 S. W. 403. It is shown in those opinions and the authorities referred to and discussed therein that there is no unalterable rule measuring the competency of a witness because of his or her age, and that the true test is: Whether the witness possesses sufficient intelligence to truthfully narrate the facts to which his attention is directed and about which he may be inquired?"

There is nothing indicating that the infant prosecutrix here was not a competent witness or did not possess sufficient intelligence to truthfully narrate the facts as testified to by her, and therefore we conclude that the court did not err, but properly permitted her to testify, leaving it for the jury to determine only the weight and credibility of her testimony.

It is next complained that the trial court erred to the prejudice of appellant's substantial rights in permitting the mother to testify not only as to the complaint made by prosecutrix, but to narrate the details of the complaint as made by the infant to her at her first opportunity, or immediately upon reaching her home and within a few minutes after the offense occurred.

The fact that the infant prosecutrix made a complaint soon after the offense raises the question of its admissibility on the ground of its being, under the circumstances stated, a part of the res gestæ of the crime itself. The established practice in this country, under the rule generally announced, is to admit only testimony as to the fact that the complaint was made, unless it was made so soon after the offense as to be a

part of the res gestæ, Greenleaf on Evidence, sec. 213, page 210, note 2; 33 Cyc. secs. 1463-1467, inclusive; Gravitt v. Commonwealth, 184 Ky. 429, 212 S. W. 430; Kirby v. Commonwealth, 210 Ky. 353, 275 S. W. 866; also Meade v. Commonwealth, 214 Ky. 88, 282 S. W. 781, 782, wherein the rule as announced in 33 Cyc., supra, is quoted with approval as follows:

"By the weight of authority the evidence must be confined to the bare fact that complaint was made; the details or particulars of the complaint not being admissible as substantive testimony, unless the statement is part of the res gestæ."

The question then here arises as to whether or not the mother's evidence, in somewhat detailing the particulars of the complaint given her by her seven year old daughter, the prosecutrix, so soon after the offense and upon the child's first opportunity had to tell her mother as the one to whom she would naturally make her complaint, was here, under such circumstances, admissible as res gestæ, even though such complaint was made not strictly contemporaneously with the offense so as to satisfy either the requirement of the Verbal Act doctrine (perhaps not properly to be considered as an exception to the "hearsay" rule) or of the strict "res gestæ" rule as an exception to the "hearsay" rule and, as such, requires that the complaint should have been made before there "had been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance," precluding the complaint's being the product of afterthought or deliberate design. Wigmore on Evidence, vol. 3, sec. 1750. Also as to this, in supplement thereto, vol. 5, sec. 1761, page 406, it is stated that the peculiar nature of the present "res gestæ" rule, as being an exception to the "hearsay" rule, renders its principles substantially inapplicable to children of such tender years as precludes their complaints, even where not made coincidentally with the offense, being the product of or prompted by afterthought or deliberate design.

However, since we are not here required to determine whether the witness' recital of more than the fact that the child made complaint to her was, upon the grounds indicated and by reason of the circumstances under which the complaint was made, admissible as

coming within the "res gestæ" exception to the "hearsay" rule, we will not pursue our inquiry upon that question or attempt to here decide same, it being sufficient answer to appellant's objection, here first made to the mother's narration of the details of the child's complaint, to say that no objection or exception thereto was taken by appellant upon the trial when the complained of evidence was introduced, and therefore he must be regarded or treated as having waived his right to complain of its introduction, within the well-established rule that, where neither objection nor exception was offered at the time evidence was excluded or introduced, accused could not complain of the ruling on appeal. Utterback v. Com., 190 Ky. 138, 226 S. W. 1065; Traughber v. Com., 198 Ky. 596, 249 S. W. 770; Dunnaway v. Com., 198 Ky. 605, 249 S. W. 795; Vansant v. Com., 204 Ky. 489, 264 S. W. 1074; Cummins v. Com., 208 Ky. 695, 271 S. W. 1044; Goodfriend v. Com., 216 Ky. 573, 288 S. W. 330; Waters v. Com., 221 Ky. 433, 298 S. W. 1078; Whitehead v. Com., 192 Ky. 428, 233 S. W. 890.

Appellant's next objection is that the court erred in the matter of the instructions given, by reason of its failure to also instruct upon the offense of unlawfully detaining a woman against her will, section 1158, Kentucky Statutes, as being a lesser degree of the offense, for which here indicted, of attempting to commit rape, section 1153, Kentucky Statutes, and under an indictment for which the accused upon trial could be convicted for such lesser degree offense.

As to this contention, it may be conceded to be the rule that where there is evidence tending to support the conviction of the accused for the lesser offense of detaining a woman against her will, the accused is entitled to have an instruction given thereon. Meade v. Com., supra; Nider v. Com., 140 Ky. 684, 131 S. W. 1024, Ann. Cas. 1913E, 1246.

Upon such ground, appellant contends that the court, in having here failed to give an instruction upon unlawfully detaining a woman, it being a lesser degree offense of and embraced in the one for which indicted, committed reversible error in failing to so instruct, as by reason of such omission it resulted that the court failed to instruct upon the whole law of the case.

A like contention was with equal insistence urged, upon facts very analogous with those here presented, in

450

the case of Logsdon v. Commonwealth, 215 Ky. 707, 286 S. W. 1067, where the court in there rejecting and answering such contention said:

"It is not, however, in every case where a lesser crime is held to be a degree of the crime charged that the defendant is entitled to an instruction under the law relating to the lesser crime, but only in such cases as the evidence of the case warrants it. * * * In the case now before us, as we read the record there is no evidence which would warrant an instruction under the statute denouncing detaining a woman against her will. If the facts proved for the commonwealth are accepted, appellant went far beyond the bounds of the crime of detaining a woman against her will. * * * Under those facts, appellant was guilty either of an attempt to rape the child, with which he was charged by the indictment and for which he was convicted, or he was guilty of an aggravated assault upon her. * * * There was no place in the case, under its facts, for an instruction under the detention statute, since there was no evidence to base it on, and the trial court did not err in failing to submit that question."

We likewise are of the opinion that in the instant case there was no evidence on which to base an instruction on unlawfully detaining a woman against her will and therefore that the court did not err in failing to give such an instruction.

Finally, the appellant complains that the court erred to his prejudice in permitting the commonwealth, when appellant attempted to establish his general reputation for being a man of good moral character by those living in his neighborhood, who best knew him, to use the opening thus made for cross-examining his witnesses by interrogating them as to whether they had heard general talk in his neighborhood of his having committed other specific crimes or misdemeanors about the time of or shortly before his alleged commission of the attempted rape for which here indicted.

Appellant concedes the rule to be that where the accused attempts to establish a generally good moral character, the commonwealth may inquire as to particular acts, but he insists that the prior specific acts inquired of must have foundation in fact and that it had

no right to here mislead the jury by inquiring as to "conjured" instances that they knew were without foundation. He complains that such inquiries made upon cross-examination were improper, and were but another way the opposition had of getting in evidence the matter of other prior offenses in violation of the rule in such case controlling that "evidence of another and distinct offense is not admissible, unless it is needed to establish motive, identity, or the like."

In considering and determining the merit of this contention, it may be noted that in the case of Copley v. Com., 184 Ky. 185, 211 S. W. 558, 559, this court announced the right of the commonwealth, upon cross-examination of a witness testifying as to the accused's good reputation, to inquire as to his having heard rumors of prior particular acts of misconduct upon his part. There we said:

"It is well settled that, where the defendant offers evidence of his good reputation, the witness may be asked on cross-examination if he has not heard rumors or reports of particular acts of misconduct on the part of the defendant, not for the purpose of proving such acts, but for the sole purpose of testing the accuracy and credibility of the witness; but where there is an objection to such evidence, or a motion to limit its effect, the court should admonish the jury that it is admitted for the sole purpose of testing the accuracy and credibility of the witness, and not as substantive evidence of the defendant's guilt of the offense charged. McCreary v. Com., 158 Ky. 612, 165 S. W. 981; Clark v. Com., 165 Ky. 472, 177 S. W. 251. Otherwise the jury might in a doubtful case convict the defendant upon evidence of other offenses not necessary to identify the accused, or to show guilty knowledge, a criminal intent or motive, or a system of criminal action."

See, also, the elaborate and exhaustive treatment of this subject as presented in the late case of Shell v. Com., 245 Ky. 223, 53 S. W. (2d) 524, 528. In the Shell Case, supra, we said:

"Evidence as to the character of the defendant as a witness must first be introduced by the commonwealth and may then be rebutted by the defendant by testimony of the same kind. It is con-

fined to evidence of general moral character, and for truthfulness or veracity. The time to which this evidence relates is as of the day the defendant testifies, and a reasonable period theretofore, provided it is shown that such character or reputation has been practically continuous. It is the duty of the court to admonish the jury the purpose for which the evidence is introduced.''

It is to be noted in this case the appellant had, by his character witnesses introduced, attempted to establish his reputation as a man of good moral character, as bearing upon the question of his guilt or innocence of the offense charged. The inquiry addressed to these witnesses by the commonwealth, as to whether or not they had heard general rumors of prior offenses, of like character with that here charged, having been committed, by the accused about the time or shortly before his commission of the attempted rape, had a twofold purpose; refuting the accused's possession of a general reputation for good morals which he had sought to establish, as bearing upon his guilt or innocence, and testing the accuracy and credibility of the testimony of his witnesses as to his having a good reputation.

Considering, however, this character of cross-examination of accused's witnesses as having been permitted by the court only for the purpose of testing the accuracy and credibility of the witnesses, the question then arises as to whether or not, appellant having objected to such character of interrogation, it became the duty of the court to admonish the jury, even in the absence of a motion therefor, as to the purpose for which it was allowed to be introduced and could be considered by it.

This question has been very thoroughly considered by us in a number of late cases, wherein we have held, somewhat at variance with our pronouncements in earlier cases, that it is not the mandatory duty of the court in such instance to admonish the jury as to the sole purpose for which the evidence is introduced and that no error prejudicial to the appellant's substantial rights is committed by the court in failing to give such admonition, where the accused, even though objecting to the evidence, fails to ask for an admonition of the jury that it can be considered by it solely for the purpose of testing the accuracy and credibility of the witness.

The last case in which this subject was reviewed and such ruling made by us was that of Clair v. Com., 267 Ky. 263, 102 S. W. (2d) 367, wherein we said:

"The contention that the inquiry as to the character of appellant should not have been extended beyond the time of the discovery that the offense had been committed cannot be sustained.

"No complaint is made of the failure of the court to admonish the jury as to the purpose of the impeaching testimony, but, in the absence of a request for such an admonition, there was no error in this respect. As pointed out in Rogers v. Com., 264 Ky. 187, 94 S. W. [2d] 345, there is some confusion in the opinions of this court as to the duty of the trial court to admonish the jury as to the purpose for which testimony of this character is introduced. The rule announced in some of the early cases, that the duty to so admonish the jury was mandatory, was based upon the theory that such an admonition was in the nature of an instruction on the merits of the case, and therefore must be given by the court under the rule that it is its duty to give the whole law of the case whether requested or not. In Ochsner v. Com., 128 Ky. 761, 109 S. W. 326, 33 Ky. Law Rep. 119, it was held that an admonishment as to the purpose of impeaching testimony is not an instruction, as defined by section 225 of the Criminal Code of Practice, and therefore need not· be in writing and is not included in the rule requiring the court in criminal trials to give the whole law of the case. That being true, the defendant must call the attention of the court to the alleged error, and if the court refuses to admonish the jury he must save the point by an exception. There is an intimation in some of the opinions, particularly the earlier ones, that a mere objection to the evidence is sufficient, but the proper rule is that a specific request for an admonition should be made. The evidence is competent, and an objection to it should be overruled. Up to this point no error has been committed. If the defendant desires to have the effect of such evidence limited, he should request the court to give the proper admonition, and if the court then refuses to admonish the jury he must

454

except to the ruling in order to save the question for review.''

See, also, the case of Sawyer v. Com., 267 Ky. 388, 102 S. W. (2d) 371, decided upon the same day and to like effect as the Clair Case, supra, and Zahia Solomon, Adm'x v. Martin Dabrowski (Mass.) 3 N. E. (2d) 744, reported with annotation in 106 A. L. R. 464.

Therefore, after a very careful consideration of the whole record and finding a determination of the questions presented made in harmony with these rules announced, we are of the opinion that no error prejudicial to appellant's substantial rights was committed upon the trial.