## Curnutt v. Commonwealth (three cases).

November 4, 1949.

360

H. H. Owens for appellant.

A. E. Funk, Attorney General, and H. D. Reed, Jr., Assistant Attorney General, for appellee.

JUDGE LATIMER—Affirming.

Wash Curnutt and his sons, Paris Everett and Hyden Eugene, were jointly indicted for murder. They were jointly tried and each convicted of voluntary manslaughter. The father's punishment was fixed at 14 years confinement and the sons received 10 years each. They appeal urging several grounds for reversal.

It is first contended that the infant defendants, who were 15 and 16 respectively, were not proceeded against in the Knox County Juvenile Court and, consequently, the Knox Circuit Court did not acquire jurisdiction. The record does not support appellants in this contention. The infants were brought before the County Judge, after proper notice had been given to both parents of the children, and a hearing conducted by the court, after which an order was entered, which, among other things, contained these words: "* * * the court is of opinion, and so adjudges and orders, that the defendant, Hyden Eugene Curnutt and Paris Everett Curnutt, be committed to the county jail to await the action of the Knox County grand jury at its coming February 1949 term, and that the court waives any further jurisdiction as to the charge against the said infant defendants and refers the charge against them to the action of said grand jury, * * *."

There is no departure here from the procedure as set out in Subsection 2 of KRS 199.080. See Turner v. Commonwealth, 268 Ky. 314, 104 S. W. 2d 1087, and

Winfree v. Title Insurance & Trust Co., 264 Ky. 488, 94 S. W. 2d 995.

The case of Edwards v. Commonwealth, 264 Ky. 4, 94 S. W. 2d 25, cited and relied on by appellants, in no way renders aid to appellants' contention since the objectionable departure there was the failure to give notice to the parents or to conduct a hearing, both of which were done in the instant case.

It is next contended that the evidence as introduced by the Commonwealth was insufficient to sustain the verdict and the court erred in refusing to give a peremptory instruction for appellants. We have two entirely different and conflicting stories. On December 11, 1948, Paschal Feltner was shot and killed. On the day of the killing, Paschal, who was the son of James Feltner, came to his father's home which was situated across the road from the Wash Curnutt home. Paschal arrived about 4 o'clock in the afternoon. Present at the Feltner home were Paschal's mother, who is a sister of Wash Curnutt, Mary Feltner, James Feltner, and three small children. According to the testimony of the Commonwealth, Wash Curnutt came into the Feltner home where the family was gathered. He had been seen taking a drink of moonshine from a jar that afternoon. While in the Feltner home Wash Curnutt brandished two pistols, a .38 and a .45 and made threats against Dishman Jones, a close neighbor and Curnutt's landlord. Continuing his threats against Dishman Jones, Wash Curnutt offered Paschal $15 if he would go over and "whip" Jones. On his refusal to do this Wash Curnutt said he would give him $1500 if he would kill Dishman Jones or would get him out until Wash Curnutt could kill him. Paschal refused to do this and his refusal seemed to incense and anger Wash Curnutt. Whereupon, he pulled and pushed Paschal out of the room onto the porch and into the yard. He dragged and pushed Paschal out to the front gate where Wash Curnutt's two boys, Hyden Eugene and Paris Everett, were standing, each holding a shotgun. Paschal's brother and father, both unarmed, pleaded for Wash to let the boy alone. Whereupon, Wash Curnutt began firing both pistols. The two sons then joined their father in the shooting, both firing their shotguns. Paschal was killed almost instantly.

Appellants tell an entirely different and contradictory story. They say that the deceased, Paschal Feltner, came to the Curnutt home drinking moonshine; that he ate supper in the Curnutt home, immediately after which Wash Curnutt went to the barn to do some chores; that Paschal picked up one of Wash Curnutt's guns and took it home with him making the remark as he left that Wash had better not come after it, and if he did he wouldn't return. One of the boys went to the barn and told his father that Paschal had taken his gun. Whereupon, the father, without coming to the house, went immediately to recover the gun. The boys, who had heard Paschal make the statement that if their father came after the gun he wouldn't return, fearing there might be trouble, followed the father with their shotguns. They say that when they reached the front gate the Feltners were shooting at their father and that when their father fell they thought he had been shot, and in defense of their father they fired at Paschal.

There were other corroborating circumstances, the strongest of which is testimony of some neighbors, who apparently were disinterested, that James Feltner came rushing into their house carrying one of the pistols and asked for some more shells saying that he had emptied the gun. At the close of the fracas, James Feltner did have the pistol. They attempt to explain this in saying that after Paschal had been shot Wash Curnutt threw the pistol in the front yard before going back to his home. You could hardly expect a more conflicting story, and yet it is readily observable it is not our prerogative to say which of the two stories shall be believed. Obviously, that is a matter for the jury.

Numerous complaints are made about the introduction of allegedly incompetent evidence. We have carefully considered each objection raised. Some of the evidence, we conclude, was competent, and that that borders on incompetency, if not competent, is of such a trivial and nonprejudicial character as to be ineffective. It will be noted that the defendants were tried jointly, and, obviously, some of the evidence introduced as affecting the father, Wash Curnutt, had no application as to the case of the boys and would have been considered incompetent but since they chose to be tried together it was impossible to keep that phase of the case out of

the evidence. The persistent questioning of character witnesses relative to a conclusion as to why Wash Curnutt had all these guns was possibly out of place, yet might have some bearing in testing the knowledge of the witness who was testifying of the good character of Wash Curnutt. See Wright v. Commonwealth, 267 Ky. 441, 102 S. W. 2d 376.

The alleged "mulling over the record" condemned by counsel does not indicate that the manner of the reading was prejudicial. The record of the former conviction was introduced and was unquestionably competent as against a second offender. Interrogating Wash Curnutt as to whether or not he was the person named in the record was also competent. Of course, the evidence of former conviction related only to Wash Curnutt and not to the other two defendants. After having elected to be tried together, the sons cannot predicate a reversal upon the fact that the evidence was prejudicial against them when it was competent against the father, and especially is this so when the court admonished the jury that the evidence was to be considered only against the father.

The allegedly incompetent evidence in rebuttal, which, it was contended should have been allowed only in chief, was nothing more than affording a witness an opportunity to explain a matter which tended to create distrust of his truthfulness and integrity, or was explanatory evidence giving a little better picture of the surroundings after all the contradictory and confusing testimony concerning a shot which hit the fence. The ground work for these statements was made in cross-examining Wash Curnutt. This may be permissible. See Whartons Criminal Evidence, Section 1401. It will be noted that much of this rebuttal evidence attempted to be introduced was excluded by the court.

The last complaint is concerning the instructions. It will be noted that appellants did not include this ground in their motion and grounds for new trial. We have repeatedly held that we will not reverse the judgment of the trial court upon a ground not raised in the motion and grounds for new trial. Cheek v. Commonwealth, 162 Ky. 56, 171 S. W. 998; Manning v. Commonwealth, 281 Ky. 453, 136 S. W. 2d 28; and Johnson v. Commonwealth, 300 Ky. 461, 189 S. W. 2d 684.

We conclude, therefore, after careful consideration of all the grounds relied upon, there is no showing of errors sufficiently prejudicial to justify a reversal.

The judgment is affirmed.